UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


LINDA SCHROEDER,                )
                                )
       Plaintiff,               )
                                )
   vs.                          )       Case No. 4:07CV1661 SNLJ
                                )
CITY OF BYRNES MILL, et al.,    )
                                )
       Defendant.               )


                        **MEMORANDUM AND ORDER**

   This matter is before the Court on defendants' motion for summary judgment (# 31), filed December 17, 2008. Plaintiff filed a memorandum in opposition (#41) on February 2, 2009. Defendants filed a reply (#44) on February 12, 2009. Defendants seek summary judgment on both counts of plaintiff's first amended complaint.

**I. Statement of the Case**

   Plaintiff, Linda Schroeder, was operating a vehicle in the left lane of Highway 30 in Byrnes Mill, Missouri. The relevant portion of Highway 30 has two lanes in each direction. The vehicle she was operating was owned by Gilbert Schroeder Sod Sales, Inc., a business operated jointly by plaintiff and her husband. Plaintiff's nephew was a passenger in the vehicle. Plaintiff stated that she was traveling in the left lane because she was going to turn left although she was not sure where the street she was to turn on was located and she did not have her turn signal activated. Plaintiff was also traveling below the speed limit at the same rate as a truck in the right lane. Byrnes Mill Police Chief, defendant Edward Locke, Sr., pulled plaintiff over for driving in the left lane while not passing or preparing to make a left turn.

Chief Locke stated that he initially pulled the plaintiff over intending only to give her a verbal warning. During the stop, plaintiff became argumentative and hostile, but the parties disagree about the level of hostility. Defendants assert in their undisputed facts that Chief Locke decided to issue plaintiff a citation instead of a verbal warning when it became clear from her words and demeanor that she was likely to make some sort of complaint regarding the stop. Plaintiff attempts to refute this fact by stating that she "verbally challenged Chief Locke, questioning among other things whether she had committed a violation of the law." It is clear that the encounter between plaintiff and Chief Locke was contentious, and parties both agree that it resulted in a written citation rather than a verbal warning.

Chief Locke wrote plaintiff a ticket for "Improper Lane Usage (Driving in passing lane)," but plaintiff refused to sign the ticket. Plaintiff acknowledged that she understood signing the ticket was not an admission of guilt, but simply an acknowledgment of receipt and agreement to dispose of the matter. Plaintiff was told the consequences of a failure to sign would be her arrest and having her car towed. Plaintiff continued to refuse.

At some point before or during the stop Chief Locke had radioed for an additional officer. Byrnes Mill Officer Young arrived on the scene soon after the initial exchange between plaintiff and Chief Locke. Chief Locke instructed Officer Young to arrest plaintiff. Officer Young handcuffed plaintiff and placed her in the front seat of his police car. Officer Young allowed plaintiff to choose if she would like to be transported for booking to the Byrnes Mill Police Department, approximately five minutes away, or to the Jefferson County Sheriff's Department, approximately twenty-five minutes away. Plaintiff requested to be transported to the Jefferson County Sheriff's Department. During the drive plaintiff began to complain of chest pains. Officer Young offered to take her to the hospital but plaintiff declined. While plaintiff was being booked

at the Jefferson County Sheriff's Department, she again claimed of chest pains. At this point, plaintiff was transported by ambulance to St. Anthony's Hospital in South St. Louis County. Plaintiff was released from custody once the ambulance arrived, she left the hospital on the same day, and she was not taken back into custody.

While plaintiff was being transported, Chief Locke arranged for a tow truck to tow plaintiff's vehicle that was located on the shoulder of Highway 30. Plaintiff alleges that she told Chief Locke that her nephew was able to drive the vehicle home, though Chief Locke denies this. Plaintiff also claims the towing of the vehicle resulted in her nephew being left on the side of the highway in the winter with no ability to get home.  Also, while plaintiff was being transported, plaintiff's husband went to the tow lot where the vehicle was located, paid $100.00 to the towing company for towing and storage, and retrieved the vehicle

Plaintiff brings this claim under 42 U.S.C. § 1983 alleging unlawful seizure and "First Amendment Retaliation."

**II. Summary Judgment Standard**

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material

3

fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

**III. Fourth Amendment Seizure Claim**

The community caretaking doctrine generally allows the police to impound a vehicle where necessary to ensure that the location or operation of the vehicle does not jeopardize the public safety. *See* South Dakota v. Opperman, 428 U.S. 364, 369 (1976). Defendants argue that the seizure of plaintiff's vehicle was *de minimis* and it was a reasonable seizure. "[T]here is a *de minimis* level of imposition with which the Constitution is not concerned." Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996). Defendants further contend that plaintiff did not own the car but was only in "lawful possession." They also note that the car was held for less than an hour and her

husband paid the $100 to the towing company to have the car returned. Defendants then direct this Court to U.S. v. Robinson, 455. F.3d 832 (8th Cir. 2006), in which the Eighth Circuit found a *de minimis* level of imposition where a driver was detained for several minutes after a traffic stop was complete. Id. at 833. However, the few additional minutes in Robinson is easily distinguishable from this case. The plaintiff's vehicle here was held for nearly an hour, taken to a different location, and plaintiff's husband had to pay $100 to retrieve the vehicle. This Court holds that, though the damages might be small, the seizure was not *de minimis* in nature. This Court will now turn to whether the seizure was reasonable.

Reasonableness under the Fourth Amendment is a question of law. United States v. Higgins, 282 F.3d 1261, 1269 (10th Cir. 2002). In cases challenging impounds and inventory searches in the criminal context, courts have generally held that the exercise of discretion is lawful if it is guided or limited by standardized criteria or polices. Colorado v. Bertine, 479 U.S. 367, 372-73 (1987); Florida v. Wells, 495 U.S. 1, 3-5 (1990).

Plaintiff argues that it was unnecessary to tow the vehicle because plaintiff's nephew, a licensed driver, was present and was willing to take custody of the vehicle. Defendants respond that, although the caretaking doctrine does allow for a passenger to take responsibility of the car, it also allows for the police towing of the vehicle, and there is "no constitutional obligation" to choose one method of caretaking over the other. Discussing the impoundment of a vehicle for an inventory search, the Supreme Court stated in Bertine that the existence of a reasonable alternative does not make an inventory search unlawful. Id. at 373-74. In other words, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." Id. at 374, *quoting* Illinois v. Lafayette, 462 U.S. 647 (1983).

This Court has found no case that directly addressed a situation like that in this case where the car was located on the shoulder of a public roadway and there was an alterative driver present. Still, relevant cases mention the presence of another driver as a factor in determining the reasonableness of an impoundment. *See* U.S. v. Duguay, 93 F.3d 346 (7th Cir. 1996) (impoundment unreasonable where vehicle was parked in a lot, plaintiff was not the driver, and plaintiff had already exited the vehicle and was heading toward an apartment when arrested); U.S. v. Pappas, 735 F.2d 1232, 1234 (10th Cir. 1984) (impoundment held unreasonable where vehicle was parked on private property and there was another licensed driver present); *cf* U.S. v. Skillern, 947 F.2d 1268 (5th Cir. 1991) (holding that the Fourth Amendment does not require the police to offer defendants the opportunity to call someone to pick up the vehicle as an alternative to impoundment). The plaintiff also cites U.S. v. Petty, 367 F.3d 1009 (8th Cir. 2004), for the proposition that the caretaking function of police can be satisfied if the vehicle can be left in the custody of another driver. As defendants note, in Petty the Eighth Circuit held the impoundment reasonable but, unlike the case at hand, the Court noted there was no one present who was willing to take custody of the vehicle. Id.

Despite the fact that, under Bertine, the police need not choose the least intrusive means, the police still must act in a manner that is reasonable under the circumstances. Byrnes Mill's Police Department had a policy that all vehicles be towed after an arrest where an owner of the vehicle is not present and able to take responsibility for the vehicle. This may be a reasonable course of action in most situations, but the defendants have failed to show that it was reasonable in this situation in which plaintiff requested that her nephew, a licensed driver present at the time of arrest, take responsibility for the car. This Court is unconvinced that Chief Locke's actions

were reasonable under the circumstances and, as such, summary judgment cannot be granted on plaintiff's Fourth Amendment claim for the seizure of her vehicle.

**IV. First Amendment Claim**

Plaintiff's next claim is for violation of her First Amendment rights. Plaintiff alleges that because Chief Locke did not decide to issue her a citation until after she challenged the validity of the stop, the citation was unconstitutional retaliation in response to her exercise of First Amendment rights. Criticism of public officials is a protected First Amendment right. New York Times Co. v. Sullivan, 376 U.S. 254, 269-70 (1964). The Eighth Circuit has held that "[r]etaliation by a government actor in response to such an exercise of First Amendment rights forms a basis for § 1983 liability." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). In order to demonstrate a First Amendment retaliation claim the plaintiff must show that Chief Locke's actions were motivated in part by plaintiff's exercise of her constitutional rights, and that Chief Locke's actions caused plaintiff to suffer an injury that would "chill a person of ordinary firmness" from continuing in the protected activity. Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001).

Chief Locke admits that plaintiff's speech was a motivating factor in his decision to issue her a citation. However, this Court holds that plaintiff has failed to establish that "a person of ordinary firmness" would be deterred from challenging the decision to make a traffic violation simply because they were issued a ticket. Traffic stops often result in tickets, and it is generally understood that people may accept the ticket and still appear in court to challenge its validity. This Court finds it highly unlikely that the speech plaintiff was engaged in -- her objection to being pulled over for driving in the left lane -- would be chilled by the issuance of a ticket rather than a

warning. As such, this Court holds that defendants are entitled to summary judgment on Count II of plaintiff's amended complaint for First Amendment retaliation.

**V. Qualified Immunity**

Finally, defendants claim that Chief Locke is entitled to qualified immunity on both counts. Qualified immunity generally protects public officials acting in their official capacity from damage actions. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To overcome qualified immunity, the law that is the basis for the alleged violation must be "clearly established" at the time the alleged violation was committed and must be sufficiently clear that a reasonable official would know that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). This Court holds that the law regarding whether a driver has the absolute right to give custody of his or her vehicle to a passenger to avoid having the vehicle towed after their arrest is not so "clearly established" as to remove qualified immunity. Chief Locke was acting according to Byrnes Mill Police Department procedure. Although, as discussed above, there has been relevant dicta in cases discussing passengers taking custody, there is no controlling case law that has held that such an action is necessary. As such, Chief Locke is entitled to qualified immunity on Count I for violation of the Fourth Amendment. Because the other claim against Chief Locke has been dismissed, the issue of his claimed immunity as to that claim is moot.

**VI. Conclusion**

Plaintiff has alleged sufficient facts to proceed on Count I for violation of the Fourth Amendment for the seizure of her vehicle. However, Chief Locke is entitled to qualified immunity for this claim. Plaintiff has not alleged sufficient facts to proceed on Count II for First Amendment retaliation against either defendant.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment #31 is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that all claims against defendant Edward Locke, Sr. are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Count II of plaintiff's first amended complaint, First Amendment retaliation, is dismissed as to both defendants with prejudice.

**IT IS FURTHER ORDERED** that this case will proceed with Count I for unlawful seizure of plaintiff's vehicle against defendant City of Byrnes Mill, Missouri only.

Dated this ___1st___ day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE